**Billy Ray DAWSON, Petitioner-Appellant,**

v.

**William French SMITH and Harold G. Miller, Respondents-Appellees.**

No. 82–2077.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1983.

Sept. 12, 1983.*

Rehearing and Rehearing In Banc Denied Oct. 7, 1983.

---

* This appeal originally was decided by an unpublished order on September 12, 1983, pursuant to Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Robert C. Babione, Asst. Fed. Public Defender, East St. Louis, Ill., for petitioner-appellant.

Frederick J. Hess, U.S. Atty., Richard H. Lloyd, Asst. U.S. Atty., East St. Louis, Ill., for respondents-appellees.

Before PELL, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner Billy Ray Dawson, an inmate at the federal penitentiary in Marion, Illinois, appeals to this court from the denial of his petition for a writ of habeas corpus. Dawson asserts that he was denied due process of law in a prison disciplinary pro-ceeding while he was incarcerated at the federal penitentiary in Terre Haute, Indiana, after a confidential informant advised prison authorities that Dawson intended to escape.

I.

On October 24, 1977, while confined at the federal penitentiary, Terre Haute, Indiana, Dawson was the subject of an incident report which indicated that he "planned to escape." The report specified that:

"Information indicates that Subject and his cell partner, PARTIN, Billy W., # 20273-101, did during the month of October—1977—plan to escape from inside the confines of the United States Penitentiary, Terre Haute, Indiana. The source of this information is considered to be reliable and will remain CONFIDENTIAL to ensure the orderly running of the institution."

That same day Dawson was provided with a copy of the incident report and after a "minor disciplinary action" hearing the incident was referred to the Institution Disciplinary Committee ("IDC") for further action. A hearing date was set and Dawson was informed in writing of his rights before the IDC including his right to representation by a staff member, the right to call witnesses, and the right to be advised of the IDC decision. He also had the right to be advised of the facts providing the basis for the IDC's decision, unless such disclosure might tend to jeopardize institutional safety.

On October 25, 1977, Dawson appeared before the IDC and after being confronted with the charge against him, he denied the same. The IDC then found that Dawson did indeed plan to escape as charged. The IDC imposed a forfeiture of 100 days of statutory good time and ordered that he be placed in disciplinary segregation. The Committee based its decision finding Dawson guilty on the contents of the disciplinary report, the investigative summary, and Dawson's statements before the IDC. Shortly thereafter in December of 1977, Dawson was transferred to the maximum security Federal Penitentiary in Marion, Il-

linois. He asserts this transfer was a "direct result" of the IDC findings that he planned to escape.

In denying Dawson parole on December 13, 1979, the United States Parole Commission cited Dawson's "institutional misconduct" as a factor in their decision.[1] On August 20, 1981, Dawson brought this habeas corpus action in the United States District Court for the Southern District of Indiana and on November 4, 1981, the case was transferred to the Southern District of Illinois pursuant to 28 U.S.C. § 1404. Prior to his bringing this action, Dawson exhausted his administrative appeals of the IDC decision.

Pursuant to an agreement between the parties, a hearing on Dawson's petition was conducted by Magistrate Kenneth J. Meyers. At the time of the hearing it was agreed that the case would be submitted on pleadings and exhibits and in addition Dawson and court-appointed counsel made statements before the court. The magistrate denied issuance of the writ after reviewing all of the materials presented to him, including a copy of the confidential informant's report of the planned escape. The magistrate ruled that the record showed "without question that there was more than substantial evidence to support the decision" of the IDC. The petitioner appeals.

## II.

Dawson's main argument before this court is that he was denied due process of law as he was not provided with any of the facts upon which the charge was based and was thus unable to adequately defend himself. He also argues that when confidential information is used as the basis for prison disciplinary action, there must be some indication of the reliability of the information and specific reasons must be set forth as to why the identity of the source should remain confidential.

Our court in *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.1983), ruled that 18 U.S.C. § 4161 "creates a right to good-time credits—that is, a firm expectation that if the prisoner complies with specified conditions he will automatically earn the credits and be released earlier—a deprivation of that right is a deprivation of liberty." *Id.* at 946. *See also Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). It follows that any procedure depriving a federal prison inmate of earned statutory good-time credits must comport with the due process requirements of the Constitution.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Among these minimum requirements is notice sufficient "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564, 94 S.Ct. at 2978. However, our Supreme Court has recently reaffirmed that:

"The requirements imposed by the [Due Process] Clause are, of course, flexible and variable dependent upon the particular situation being examined.... In determining what is 'due process' in the prison context, we are reminded that 'one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison.' *Wolff v. McDonnell, supra,* 418 U.S. at 560, 94 S.Ct. at 2976. 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979)."

*Hewitt v. Helms,* 103 S.Ct. at 872 (citations omitted).

1. The Commission noted that Dawson's October 1979 Progress Report reflected that Dawson was "involved in serious and numerous violations resulting in the forfeiture of 404 days of statutory time."

We have examined the specific confidential information referred to concerning Dawson's planned escape and conclude that if Dawson were to be provided with any more specific factual information, it would seriously risk exposing the confidential informant's identity. Should this occur, there would most certainly be a grave danger of retaliation against the informant and institutional security would be jeopardized. We so conclude because:

"[t]he reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process."

*Wolff v. McDonnell,* 418 U.S. at 562, 94 S.Ct. at 2977. Providing petitioner with specific reasons as to why the source's identity should remain confidential would ignore the harsh realities of prison society as recognized in *Wolff v. McDonnell.* It is common knowledge that information quickly travels through the prison "grapevine" and it would be no time at all before a suspected informer would be "dealt with." Petitioners in cases such as this should be provided with the specific information upon which the charges against them are based except when there is danger that the disclosure will serve to aid in the identification of the confidential informant.

■ Petitioner Dawson also argues that when confidential information is the basis for a prison disciplinary decision there must be some indication of reliability. We agree. Our court has recognized this in previous decisions. In *McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1983), we remanded a similar habeas corpus case where the only showing as to the credibility of a confidential informant was that "confidential sources had

proved reliable in the past ...." *Id.* at 1049. In that case there was no indication that the specific source relied upon was reliable. The case now before us is distinguishable. The prison investigator's incident report specifically recites that the source of the confidential information was "considered to be reliable." Furthermore, our review of the confidential information provided to the magistrate *in camera* compels us to conclude that it contains more than sufficient additional information to bolster the reliability of the information relating to Dawson's proposed escape.

While it may have been preferable in a legal context that the IDC findings included an assessment of the credibility of the confidential informant, the failure of the IDC to do so does not rise to the level of a due process violation. After reviewing the materials the IDC had before it—the incident report, the investigator's summary and the confidential information—we have no reason to believe that the IDC did not adopt the credibility determination made by the prison investigator. The Supreme Court has recognized that "prison officials have broad administrative and discretionary authority over the institutions they manage" because prison administration "is 'at best an extraordinarily difficult undertaking' ...." *Hewitt v. Helms,* 103 S.Ct. at 869 (*quoting Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979). Furthermore, our circuit has recognized that it is inherently dangerous to even attempt to determine the reliability of an informant since such efforts could jeopardize lives and the willingness of informants to continue providing information. *McCollum v. Miller,* 695 F.2d at 1049.

Until the Supreme Court mandates other procedures, we leave it to prison officials to "make judgments in these sensitive matters; [as all too often] they happen to be matters of life and death." *McCollum v. Miller,* 695 F.2d at 1049. The showing of credibility made in the present case was sufficient to provide Dawson with due process.

### III.

■ Dawson also argues that the IDC determination is not supported by substan-

tial evidence. In *Jackson v. Carlson, supra,* our court recently discussed the standards applicable to the review of prison disciplinary proceedings. "[U]nless we are persuaded that no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented ... we cannot conclude that there was a denial of due process ...." 707 F.2d at 949 (citations omitted). After a review of the evidence presented to the IDC in the case before us we refuse to conclude that there was a denial of due process. We "cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a ... prison." *Wolff v. McDonnell,* 418 U.S. at 560, 94 S.Ct. at 2976.

### IV.

For the reasons discussed herein, the order of the district court is AFFIRMED.