**Lossie HUDSON, Jr., Plaintiff,**

v.

**Elmer O. CADY, et al., Defendants.**

**Civ. A. No. 82–C–497.**

United States District Court,
E.D. Wisconsin, E.D.

July 2, 1985.

---

Lossie Hudson, Jr., pro se.

Richard J. Boyd, Asst. Atty. Gen., Madison, Wis., for defendants.

### DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a pro se civil rights action for damages, declaratory, and injunctive relief brought by the plaintiff Lossie Hudson, Jr., pursuant to 42 U.S.C. § 1983. He alleges that on April 8, 1980, while he was incarcerated at the Dodge Correctional Institution in Waupun, Wisconsin, he received a serious misconduct report based upon information supplied by five confidential informants. A disciplinary hearing was held on April 18, 1980, and Hudson was found

guilty of the charges and sentenced to 5 days in program adjustment and 120 days in program segregation. As a consequence of this violation, Hudson's security classification was changed to maximum, and he was transferred to the Wisconsin Correctional Institution in Waupun. The plaintiff reached his mandatory release date while this action was pending, and is no longer incarcerated.

The plaintiff alleges that he was denied his right to due process at the April 18, 1980 disciplinary hearing since he received insufficient notice of the charges to enable him to prepare a defense. Cross motions for summary judgment have been filed along with copies of the disciplinary report, and the disciplinary committee's report. The defendants have also submitted copies of the confidential reports relied on by the committee. On the basis of these materials and the parties' arguments, I find that there is no dispute as to any material issue of fact and that the defendants are entitled to judgment as a matter of law.

Hudson was provided with a conduct report on April 8, 1980 which notified him that he was charged with three rule violations: assault, threats, and disruptive conduct. In the space provided for description of the incident, the report states: "Inmate Hudson has been placed on report for strongarming, harassing and threatening other residents. The above allegations have been made by five resident confidential informants by written letter. These letters will be kept in a confidential file of the Security Director and will be reviewed only by the Adjustment Committee at the time of the hearing into this." Hudson contends that because neither he nor his institutional advocate were given a copy or even a summary of the confidential reports, he was unable to present anything but character evidence at his hearing.

■ Among the minimum requirements of due process to be afforded to prisoners in disciplinary proceedings is notice sufficient "to inform (the prisoner) of the charges and to enable him to marshal the facts and prepare a defense." *Wolff v.*

*McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). In *McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1982), the court was faced with a similar situation involving a charge of extortion and found that notice which was more specific than that provided in this case was so general that it was difficult for the plaintiff to prepare any defense. The court noted, however, that the essential information needed to prepare a defense was the time and place of each act of alleged extortion, but that providing this information would have tipped the plaintiff off to the names of the confidential witnesses and victims of the alleged extortion and place their lives in jeopardy. Id. at 1048. Because the costs of providing the information outweighed the benefits, the prisoner had no due process right to the additional information.

■ The *McCollum* court suggested, however, that because the prisoner was not entitled to a summary of the confidential statements, he should receive some additional procedural safeguards like some indication that the confidential reports are reliable. In *Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983), the court ruled that the reliability of confidential information could be established by *in camera* judicial review, since "it is inherently dangerous (for prison officials) to even attempt to determine the reliability of an informant since such efforts could jeopardize lives and the willingness of informants to continue providing information." Id. at 899. Thus, a prisoner is not entitled to a statement of reasons for believing the confidential information to be reliable.

■ The Court has reviewed the five confidential letters which formed the basis of the charges against Hudson, and finds that they have several indicia of reliability. The reports are from both witnesses and victims of more than one incident of threatening conduct and one assault. The reports corroborate each other and are bolstered by a confidential incident report issued prior to the events at issue in which guards indicate awareness of tension be-

tween certain inmates in this prison unit. In *Dawson* there was a specific notation in the prison investigator's incident report that the source of the confidential information was considered to be reliable. There is no similar statement in the Disciplinary Committee's decision in this case, which indicates only "Guilty on all charges by evidence presented on confidential information." It is implicit in the decision that the informants were deemed reliable and since the prisoner is not entitled to a statement of reasons for finding the information credible, a determination that he must be provided a statement that the information was considered to be reliable would be pointless.

■ The punishment meted out by the disciplinary committee is also relevant to this inquiry since due process requirements are flexible and variable dependent upon the particular situation being examined. See *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983). Hudson was given 5 days in program adjustment and 120 days in program segregation for the rule violations at issue. Although he was transferred to a maximum security institution as a secondary result, Hudson does not allege this caused any additional period of incarceration. On the other hand, both *McCollum* and *Dawson* involved a more serious penalty, forfeiture of statutory good time, and consequently those plaintiffs were entitled to even greater procedural protections than Hudson.

It is entirely possible that the confidential letters included gross fabrications intended to rid the unit of an inmate the informants deemed undesireable for their own personal reasons as Hudson alleged at his hearing. Nonetheless, unless the court is persuaded that no reasonable adjudicator could have found the prisoner guilty of the offense charged on the basis of the evidence presented, there was no denial of due process. *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.1983). After reviewing the confidential material, this Court is not so persuaded, and the defendants are entitled to judgment as a matter of law. Pris-

on disciplinary proceedings present a unique and difficult situation, and "until the Supreme Court mandates other procedures, (the court must) leave it to prison officials to make judgments in these sensitive matters; as all too often they happen to be matters of life and death." *Dawson,* at 899 (citations omitted).

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted.