Gerald McCOLLUM, Clifton C. Piggie-
Bey, Harry L. Greene-El and Reynaldo
Ramirez-Rodriguez, Petitioners-Appel-
lants,

v.

Jerald WILLIFORD, Warden,
Respondent-Appellee.

No. 85–1985.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1986.

Decided June 20, 1986.

James B. Roberts, Legal Clinic, Carbon-
dale, Ill., for petitioners-appellants.

Richard H. Lloyd, Asst. U.S. Atty., Fred-
erick J. Hess, U.S. Atty., East St. Louis,
Ill., for respondent-appellee.

Before BAUER, FLAUM and EASTER-
BROOK, Circuit Judges.

FLAUM, Circuit Judge.

This is another round in a series of relat-
ed and protracted litigations concerning the
use of confidential informants in prison
disciplinary proceedings at the maximum
security penitentiary at Marion, Illinois.
*See Sanchez v. Miller,* 792 F.2d 694 (7th
Cir.1986); *Mendoza v. Miller,* 779 F.2d
1287 (7th Cir.1985); *Dawson v. Smith,* 719
F.2d 896 (7th Cir.1983), *cert. denied,* 466
U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186
(1984); *Jackson v. Carlson,* 707 F.2d 943
(7th Cir.), *cert. denied,* 464 U.S. 861, 104
S.Ct. 189, 78 L.Ed.2d 167 (1983). In these,
and the cases cited therein, inmates at fed-
eral penitentiaries have alleged they were
denied due process of law in prison discipli-
nary proceedings, and thereby were de-
prived of their liberty in violation of the
Fifth Amendment. In these cases, we out-
lined the minimum requirements of due
process as described in *Wolff v. McDon-
nell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d
935 (1974) and *Bell v. Wolfish,* 441 U.S.
520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979),
while affirming the lower court's findings
of no constitutional violation. We affirm
again the district court's holdings in this
case.

## I. *McCollum I*

This case is on appeal from an order entered by the district court after an evidentiary hearing that was mandated by this court when the case was first appealed. *McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982) (*"McCollum I"*). Because of the importance of the factual circumstances from which this case arose, and to which this opinion is limited, we repeat them as described in our first opinion.

These consolidated appeals from the denial of petitions of habeas corpus raise the question whether four inmates at the federal penitentiary at Marion, Illinois were denied due process of law in prison disciplinary proceedings, and thereby deprived of their liberty in violation of the Fifth Amendment.

Three of the four received the identical statement of the charges against them: "Information has been received from various confidential sources, that during the months of June, July and August, 1980, while confined in [Marion] you pressured other inmates to pay you commissary and perform homosexual acts with you. You applied this pressure by threat of harm to their person or their friends." The statement of charges against the other petitioner, Ramirez-Rodriguez, was almost the same, the main difference being the addition of the words "or caused pressure to be applied" after "pressured." Ramirez-Rodriguez was thought to be the ringleader of the gang of extortionists, the other three inmates to be members.

No additional particulars of the charges were furnished to the petitioners, on the ground that to do so would identify the confidential informants and expose them to retaliation by the petitioners or their friends. A prison investigator investigated the charges, primarily by interviewing the informants, and wrote up the results of his investigation in a report that he submitted to the prison's Institution Discipline Committee. *See* 28 C.F.R. §§ 541.12(b), 541.14, 541.-15. On the basis of this report the Committee found the petitioners guilty of the offenses charged. The Committee's decision in each case essentially repeats the charges and adds: "Information received from confidential sources have [sic] proven reliable ... in the past." Neither the investigator nor any of the informants testified, and the report was not submitted under oath. The informants' statements as summarized in the report were virtually the only evidence before the Committee when it made its decisions, for though the petitioners could have testified before the committee if they had wanted to, and some did, they had little to offer beyond general denials.

By way of punishment the Committee ordered that Ramirez-Rodriguez, the supposed ringleader, forfeit 224 days of time off for good behavior and be placed in disciplinary confinement, *see* 28 C.F.R. §§ 541.18, 541.19, for an indefinite period with periodic reviews, *see Id.,* § 541.18(c). The Committee recommended that his disciplinary confinement be in the prison's "Control Unit"—a kind of halfway house to solitary confinement, *see Bono v. Saxbe*, 620 F.2d 609, 613 (7th Cir.1980); 28 C.F.R. § 541.40—where he remains to this day. The Committee ordered the other three petitioners put in disciplinary confinement for 30 days, and apparently they ended up in the Control Unit too, but have since been released from it. All four filed petitions for habeas corpus in federal district court, and appeal to this court from the denial of their petitions by a federal magistrate to whom the cases were referred by agreement of the parties. The petitioners' counsel has not been allowed to read the investigator's report on which the Institution Discipline Committee acted.

In *McCollum I* we remanded the case because the record contained no evidence from which we could infer that if the disciplinary proceedings against three of the four petitioners were set aside, the length of their imprisonment would be reduced. On the merits of the appeal the panel weighed the costs of additional and more specific notice to the prisoner against the

benefits of reduced errors and found that the costs outweighed the benefits. 695 F.2d 1048. The information that the prisoner needed to prepare an adequate defense was the time and place of each alleged act of extortion. But to give the prisoner this information would have in effect revealed the identity of the confidential informant. This could realistically lead to the death or injury of those informants and eventually lead to a situation where no one would inform the guards of what was happening within the prison. The panel believed that the practical outcome might be that violent crime and extortion would "rage unchecked through Marion." 695 F.2d at 1048.

The panel went on to state:

But without such notice the adversary hearing so prized in American procedure is likely to have little meaning. The inmates will not know what the evidence is against them, so they will not be able to counter it with evidence of their own. The disciplinary proceeding will be inquisitorial. The conditions in Marion today make that inescapable and it is therefore consistent with due process. *But if the usual safeguards of an adversary procedure are unavailable it is all the more important that there be other safeguards, and we find none in this case. Id.* (emphasis added). The case was then remanded so that officials of Marion could testify on the feasibility of the various procedural safeguards that were discussed in the opinion. 695 F.2d at 1049. The results of that hearing are now here on appeal.

## II. *Subsequent Decisions*

Between the time of *McCollum I* (December 20, 1982) and the district court's opinion on remand (May 7, 1985), two other prison disciplinary cases were decided by this circuit and were relied on by the district judge. In *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983), the appeals of the habeas claims of five federal prisoners were consolidated. Three

of the prisoners were not the targets of anonymous informants and the IDC relied on eyewitness testimony of prison employees to punish them. 707 F.2d at 947. The court made clear that "because the prison was relying on the testimony of its own officers rather than on prison informants, the Institutional Discipline Committee was able to and did give the accused prisoners specific notice of the charges and an opportunity to confront the witnesses against them. Unlike McCollum, these prisoners had the essential elements of an adversary hearing in the Anglo-American tradition." 707 F.2d at 948. The fourth prisoner was found guilty of an assault, in part on the basis of information supplied by informants. However, unlike *McCollum I,* the prisoner was given more than adequate notice of the date, the hour, the place, and in actuality, the prisoner knew the name of the victim of the attack. The IDC also had direct evidence from a prison employee that the prisoner was at the scene of the crime at the time of the attack. 707 F.2d at 948. The fifth prisoner received notice so complete that it should have been sufficient to enable the prisoner to identify the confidential informant. "Furthermore, the chairman of the Institution Discipline Committee stated on the record that he had first hand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability. This warrant of reliability was conspicuously lacking in *McCollum." Id.* Therefore, Jackson makes clear that a finding of reliability must clearly be made in any disciplinary proceeding that relies primarily, but not necessarily exclusively, on confidential informants because such proceedings are often missing the essential elements of an adversarial hearing.

In *Davison v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984), this circuit explicitly held "that when confidential information is the basis for a prison disciplinary decision there must be some indication of reliability." In that case the prison investigator found that the specific source of the confidential information was

"considered to be reliable" and an *in camera* review of that confidential information compelled the court to conclude that there were sufficient additional indicia of reliability in the information to uphold the IDC's finding. In order to emphasize that this case had only met the very minimum of due process this court went on to state that "[w]hile it may have been preferable in a legal context that the IDC findings included an assessment of the credibility of the confidential informant, the failure of the IDC to do so does not rise to the level of a due process violation." 719 F.2d at 899. In the particular context of that case we held that the IDC can adopt the credibility determination made by the prison investigator when an *in camera* review of the confidential information contains facts that make it inherently reliable.

Two other relevant decisions by this court have been published since the hearing on remand in *McCollum I.* In *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir. 1985), we again affirmed our commitment to the principle that in order for a prison inmate to have a fair hearing, some indication of the reliability of confidential informants is required when confidential information is the basis for a prison disciplinary decision. We went on to lay out the following general alternative methods of ascertaining reliability:

> The reliability of confidential informants may be established by: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee, *McCollum,* 695 F.2d at 1049; (2) corroborating testimony, *Jackson,* 707 F.2d at 948; (3) a statement on the record by the chairman of the disciplinary committee that, "he had firsthand knowledge of the sources of information and considered them reliable on the basis of 'their past record of reliability,' " *Id.* at 948; or (4) *in camera* review of material documenting the investigator's assessment of the credibility

of the confidential informant. *Dawson,* 719 F.2d at 899.

*Mendoza,* 779 F.2d at 1293.

Because the IDC could not make the showing required under methods one, two, or three, this court concentrated on the fourth method, an *in camera* review of the confidential information. Unlike *Dawson* where the investigator's confidential report reviewed *in camera* was only found to be credible because "it contain[ed] more than sufficient additional information to bolster the reliability of the information relating to" the incident for which the prisoner was before the IDC, *Mendoza* articulated three determinations that the reviewer of confidential information must make before that review can establish sufficient reliability:

> *In camera* review of a confidential report documenting the reliability of a prison informant determines: (1) whether providing the inmate with "more specific factual information ... would seriously risk exposing the confidential informant's identity; " (2) whether the confidential report, "contains ... sufficient additional information to bolster the reliability of the [confidential] information; " or (3) whether the disciplinary committee "adopt[ed] the credibility determination made by the prison investigator."

*Mendoza,* 779 F.2d at 1293 (quoting *Dawson,* 719 F.2d at 899). This court went on to point out that under *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* —— U.S. ——, 105 S.Ct. 2768, 2770, 86 L.Ed.2d 356 (1985), the findings of the IDC must be supported by evidence in the record. While the Due Process Clause does require that a prison disciplinary committee state the factual basis for its finding as to the reliability of a confidential informant, it may make that statement in a confidential report that is reviewed *in camera* by the court rather than part of the public record. *Mendoza,* 779 F.2d at 1295, *citing Ponte v. Real,* —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).[1]

---

1. *Ponte v. Real,* —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) was also decided subsequent

to the rehearing in this case. In *Ponte* the Supreme Court held that a prison disciplinary

In *Sanchez v. Miller,* 792 F.2d 694 (7th Cir.1986) we detailed the administrative exhaustion requirements after an IDC hearing and found that the prisoner-petitioner could not demonstrate any prejudice on the merits of his appeal. In *Sanchez* we held that *McCollum's* requirement of sufficient indicia of reliability of confidential information could not be applied retroactively. 792 F.2d at 702–03. We noted that under *Wolff* it was clear, as a general matter, that new procedural rules for disciplinary proceedings will not be applied retroactively. 418 U.S. at 573–74, 94 S.Ct. at 2982–83. While *McCollum's* reliability requirement clearly arose from the Supreme Court's holding in *Wolff,* it was not compelled by it. 792 F.2d at 702. The rule of *McCollum* cannot, therefore, be applied to prison disciplinary proceedings held prior to the date of its decision—December 20, 1982.[2]

### III. *Factual Findings on Remand*

In this context the district court held a one-day hearing to examine the procedures of the IDC when confidential information was used. Both parties and the court agreed that *McCollum I* found a violation of the petitioner-prisoner's due process

rights, so the court ordered the IDC determination expunged from his record. The district court stated that the remaining issue on remand was:

> To determine what feasible safeguards can be implemented to insure minimal due process at the United States Penitentiary at Marion (USPM) in disciplinary hearings where the charges stem from information supplied by confidential informants and where the notice provided to the inmate is not detailed in terms of date, time, and place of the alleged incident.

The district court then found that the procedures set out in the "new" Prison Policy Statement 6270.5 remedied the due process deficiencies noted in *McCollum I,* if in addition, the investigative report was under oath. The district court also found that *in camera* interviews of the informants by the IDC, and the appearance of the Special Investigative Supervisor (SIS) before the IDC for cross-examination, were not feasible.

After reviewing the new procedures (which we include here in a footnote[3]) in

---

board was not *required* to state in the public administrative record the reasons why it had refused to allow the defendant inmate to call a witness for his defense. 105 S.Ct. at 2197. The question posed in *Ponte* was "whether the Federal due process requirements impose a duty on the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify." The Court stated:

> We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

105 S.Ct. at 2196. But explain it they must. *Ponte* thus supports the holdings in *Mendoza* and *Sanchez* that prison officials must, at some time and place, spell out in reasonable detail the factual basis for accepting the confidential sources of information. In *Ponte* the Supreme Court said "the burden of proving that there was a valid reason for the refusal [to call witnesses

requested by an inmate at a disciplinary hearing] is placed on prison officials rather than the inmate." 105 S.Ct. at 2199 (Stevens, J. concurring). Similarly, the case law of this circuit makes clear that prison officials at Marion bear the burden of proving that there was a valid reason for their reliance on the particular confidential information used in each IDC hearing. In summary, *Ponte v. Real* generally supports the case law developing over the prison at Marion.

**2.** In *Sanchez* the petitioner did not argue in the alternative what the state of the law was when he had his IDC hearing (1980) so the court did not reach that issue. Since this case is the appeal of the remand in *McCollum* itself, we obviously speak only prospectively as well.

**3.** We pass only on whether facially these specific procedures cure the due process deficiencies identified in *McCollum I* at Marion:

> 1) The disciplinary committee's finding of guilt must be supported by more than one reliable confidential source. If there is only one source, the confidential informant information must be corroborated by independently verified factual evidence linking the inmate charged to the prohibited act. Uncorrob-

light of the law of this circuit as described in this opinion, we find that on their face these general procedures (along with the requirement that the investigative report be under oath) sufficiently cure the due process problems we noted before. The

petitioners' argument to this court is that while these safeguards address the problem of insuring reliability of informants, the testimony demonstrates that the procedures have not in reality been implemented. While we might agree with them,[4] that

orated information from a single informant is insufficient unless the peculiar circumstances of the incident and the peculiar knowledge possessed by the informant convince the committee that the informant's information must be reliable. The committee report should include a statement giving the committee's rationale for deciding that uncorroborated single informant information is reliable.

2) The reliability of the informant must be established before informant-based information can be used to support a finding by the Disciplinary Committee. Reliability may be determined by a record of past reliability or by other factors which convince the IDC of the informant's reliability. The staff member providing the information must include a written statement of the frequency with which the confidential informant has provided information, the period of time during which the confidential informant has provided information, and the degree of accuracy of that information. If reliability is based on other factors, then such factors should clearly be specified. Staff have an affirmative obligation to determine whether there is any basis for concluding that the confidential informant is providing false information. The IDC may not consider information obtained in exchange for the promise of a favor to supports [sic] its finding.

3) All confidential information presented to the Disciplinary Committee must be in writing and state facts and the manner in which the informant arrived at knowledge of those facts.

4) The identity of the confidential informant must be known, at a minimum, by the chairman of the Disciplinary Committee and at the chairman's discretion, may be revealed to the other committee members. The substance of the confidential informant information must be known to all members of the Disciplinary Committee. The Committee chairman shall include, in the record of the hearing, a statement of the basis for finding the information provided by the confidential informant reliable.

5) Confidential informant's statements shall, at a minimum, be incorporated into the committee report by reference. The committee shall document, ordinarily in the report, the finding as to the reliability of each informant and the factual basis for that finding, unless such information would reveal the identity of the informant. In such a case, the chairman shall prepare a separate report documenting the committee's findings as to the

reliability of each informant relied on, the factual basis for that finding, the specific information relied on and the factual basis for that reliance. This report must be available for later administrative or judicial review.

4. In particular, it is troubling that the determination of reliability that the procedures mandate the SIS make, may be made even if the SIS does not ever actually speak to the confidential informant. The Warden's explanation of how the SIS *sometimes* gathers information shows why we can only pass on the *facial* constitutionality of these procedures:

Q. I assume that the investigator who gathers the information does that. Well, let me ask you this. Is there a requirement that the investigator talk to the informant, specifically, or can he get information from a third party about an informant that has information and not talk to the informant directly?

A. Well, the person getting the information can relay it to the investigating supervisor. It has to be written up, the information, in the way in which the informant gave it or either the informant write it up. And the informant could then determine that he didn't want to be interviewed by the investigating supervisor.

Q. So he could give it to another inmate, another staff member. And he could give it to the—

A. Yes.

Q. And so that the investigator would not have any direct contact with the informant at all?

A. That's correct.

Q. He wouldn't interview the informant?

A. That's correct.

Q. He wouldn't be evaluating the demeanor or the credibility of the informant firsthand?

A. That's correct.

Q. And you're saying but he has to get a written statement from the informant?

A. No, either that—for the person receiving the information has to write up the information in the way that the informant gave it to him.

Q. So it's possible that an informant can give some information to a staff member, a guard or someone that works in the institution, right?

A. That's correct.

Q. One of these people who you say may not be as sophisticated or as sensitive to these problems?

claim is irrelevant to our facial review of the constitutionality of those procedures. The petitioner in this case went through an IDC hearing before these new procedures were in place. In *McCollum I* we found that in a context without these procedures the prisoner's due process rights were violated. Because we remanded for factual findings on what is feasible in the unique context of Marion, the district court examined these new procedures. Without a real case or controversy we will not review how these procedures are currently implemented. Those claims are simply not ripe for review. *See Dial v. Coler*, 791 F.2d 78, 81 (7th Cir.1986); *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).

### IV. *Conclusion*

The federal penitentiary at Marion is the only level 6 maximum security prison in the United States. The special problems Marion confronts are well known to the bench and the bar in the Southern District of Illinois and are well documented in the opinions of this court. We commend the defense counsel, prosecutors, prison officials, Magistrates and District Judges who have struggled to deal with the competing interests and intense conflicts that have erupted from the inferno that is Marion. Each case this court has reviewed demonstrates a further step toward a more finely tuned balance between due process and

personal safety. It will continue to be a delicate balance.

The order of the district court is affirmed.

Q. And he then is required to write out in his own hand some statement of what the informant told him, right?

Q. And then that person then takes that statement and gives it to your special investigator who reads the statement and then makes a further statement which then goes to the IDC; is that right?

A. Well, that information that the person that got the information from is part of the package that goes forward, the person that got the information.

Q. Now, does that person appear in front of the IDC?

A. No, he does not.

And then later in the testimony:

Q. ... Do you have any firsthand experience in the I.D.C. determining that an informant wasn't reliable? ...

A. With the I.D.C. determining, I can't recall if the I.D.C. I think typically, when it had gotten to that stage, we assumed it was reliable.

Q. When you say it's gotten to that stage—

A. That it had moved forward as a new incident.

Q. If the investigator actually filed an incident report, then it's assumed that it's reliable?

This would appear to violate the third method of ascertaining reliability under *Mendoza,* but because there are three other alternative methods that could be used, that alone is not enough to find the procedures themselves unconstitutional. The arguments presented by petitioners are based only on a hypothetical scenario and without a true case or controversy we will not pass judgment on whether this violates the due process concerns articulated in the cases described in the previous section.