927 F.2d 607
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daniel Eugene BIFIELD, Petitioner/Appellant,
v.
Gary HENMAN, Respondent/Appellee.
 No. 89-2389.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 27, 1991.*
Decided March 6, 1991.
 
 Appeal from the United States District Court for the Southern District of Illinois, East St. Louis Division, No. 88 C 3520, William L. Beatty, Judge.
 S.D.Ill.
 AFFIRMED.
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Daniel Bifield filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2241 alleging that officials at the federal penitentiary where he was incarcerated violated his due process rights by providing him with a copy of a prison incident report with altered and falsified dates.[1] The Respondent filed a motion for summary judgment with supporting evidence. After an evidentiary hearing conducted by a magistrate, the district court found that the Respondent had not violated Bifield's rights and granted Respondent's motion for summary judgment.
 
 FACTS
 
 2
 Mr. Bifield is a federal prisoner who was incarcerated in Lewisburg, Pennsylvania.[2] On May 26, 1987, Mr. Bifield provided a urine sample to prison officials at Lewisburg. The sample was labeled LEW-5830, entered into a prison log book, and sent to a laboratory in California. Test results, forwarded to the prison in June 1987, indicated that the sample contained cannabinoids.
 
 
 3
 Mr. Bifield was placed in disciplinary segregation on June 26, 1987 and received a copy of an incident report describing the test results on June 29, 1987. It is undisputed that the incident report contained several incorrect dates in portions of the form designated to record specified dates. The incorrect dates pertain to the date and time that Mr. Bifield received the report and the date the urine sample was taken. Further, the first copy forwarded to Mr. Bifield had several written changes over the dates originally typed on the report.[3] However, the written summary of the incident on the report contains the correct date on which Mr. Bifield gave the urine sample--May 26, 1987. This date is consistent with the date recorded in the log book for urine sample LEW-5830.
 
 
 4
 After receiving the test results, prison officials conducted a further investigation and on June 30, 1987 Mr. Bifield received notice of a disciplinary hearing on the matter scheduled for July 7, 1987. At the hearing, Mr. Bifield was found to have violated prison rules and was given 30 days disciplinary segregation and forfeited 30 days of his accumulated good time.
 
 ANALYSIS
 
 5
 Because Mr. Bifield was deprived of accumulated good time credit, in which he retains a liberty interest, the protections of the Due Process Clause govern the procedures employed by the Respondent to revoke his credit. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Castaneda v. Henman, 914 F.2d 981, 983 (7th Cir.1990). One of the minimum requirements of due process afforded prisoners facing disciplinary action is advanced written notice of disciplinary charges against them such that they understand the charges they face and may prepare a defense. Wolff, 418 U.S. at 564; Dawson v. Smith, 719 F.2d 896, 898 (7th Cir.1983). However, the parameters of this notice are not unbounded and are limited by prison officials' legitimate interest in preserving order and maintaining security. Hewitt v. Helms, 459 U.S. 460 (1983); Abdul-Wadood v. Duckworth, 860 F.2d 280, 284 (7th Cir.1988).
 
 
 6
 In essence, Mr. Bifield is challenging the adequacy of the notice of the charges he faced. However, he does not contend either that he was unaware of the charges pending against him or that he was unable to adequately prepare a defense. At the evidentiary hearing below, Mr. Bifield was afforded an ample opportunity to explain how the typographical errors harmed him. He offered no explanation. We note that a prisoner need not be afforded exhaustive detail of the charges he faces if such notice threatens the orderly administration of the prison and if the prisoner is advised of the nature of the charges he faces sufficient to muster a defense. Dawson, 719 F.2d at 898; Jackson v. Carlson, 707 F.2d 943, 948 (7th Cir.1983). In this case, Mr. Bifield was sufficiently informed because he knew of the nature of the charges he faced and the date upon which the offense allegedly occurred. See Jackson, 707 F.2d at 948. He had complete notice of the nature of the charges he faced. Further, he received notice more than one week prior to the date of his disciplinary hearing on the matter. Thus, he had adequate notice to prepare a defense.
 
 
 7
 Therefore, the notice Mr. Bifield received did not violate his due process rights. The district court's grant of summary judgment to the Respondent is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 In his original petition to the district court, Mr. Bifield also challenged the regulation under which he faced disciplinary action, the timing of the delivery of the incident report, and the reliability of the evidence used to support the resulting disciplinary action. On appeal, Mr. Bifield only challenges the alleged alterations made to the incident report
 
 
 [2]
 Mr. Bifield has been transferred since the time of the incident at issue in this case. He is currently incarcerated in Marion, Illinois.3 An incident report form consists of an original and three attached carbon copies. The prisoner receives one carbon copy at the time the report is prepared and a second carbon copy after the hearing on the incident. The disciplinary committee receives the third carbon copy and the original is placed in the inmate's file