72 F.3d 132
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Curtis Lee PRIDE, Plaintiff-Appellant,
v.
Howard PETERS, III, et al., Defendants-Appellees.
 No. 94-2025.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 17, 1995.*
Decided Dec. 15, 1995.
 
 Before FLAUM, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 A disciplinary committee at the Illinois River Correctional Center found Curtis Pride, an inmate at the facility, guilty of having a sexual relationship with a staff member.[1] Pride, who worked as a law clerk at the prison law library, allegedly engaged in sexual activities with a prison librarian. The disciplinary committee relied on confidential testimony that the librarian occasionally allowed Pride to hold hands with her, fondle her, and kiss her on the lips. For this offense, Pride received one year loss of good time credits, one year in segregation, demotion to C grade for one year, and a disciplinary transfer to a maximum security prison.
 
 
 2
 Pride brought suit against several prison officials under 42 U.S.C. Sec. 1983, arguing that (1) the disciplinary committee violated his constitutional rights by refusing to call two witnesses and failing to reveal details of the confidential testimony used against him; (2) the committee ordered him transferred to a maximum security prison in retaliation for his previous lawsuits against prison officials; and (3) his equal protection rights were violated because a white inmate received a lesser sentence than he did. The district court granted summary judgment in favor of the defendants, and Pride appeals.
 
 I. Personal Involvement of Howard Peters
 
 3
 First, Pride argues that the district court improperly dismissed defendant Howard Peters because Peters was not personally involved in the alleged violations of Pride's rights. A plaintiff may recover under Sec. 1983 only if the defendant was personally involved in the deprivation his constitutional rights. Moore v. Indiana, 999 F.2d 1125, 1129 (7th Cir.1993); Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir.1986). Pride contends that Peters, who is the Director of the Illinois Department of Corrections, personally denied a grievance filed after his disciplinary conviction.
 
 
 4
 Illinois regulations allow an inmate convicted of a disciplinary violation to appeal through the prison grievance procedures. See Ill.Admin.Code Secs. DOC 504.800-504.870. The procedures provide that a Grievance Officer will review the claim and make a recommendation to the Chief Administrative Officer (Warden), who then makes a decision. Id. at Sec. 504.830. If the prisoner is still dissatisfied, he may appeal to the Director of the Illinois Department of Corrections. Id. at Sec. 504.850(a). The regulations specify that "[t]he Director shall review the grievance and the responses of the Grievance Officer and the Chief Administrative Officer and shall determine whether the grievance requires a hearing before the Administrative Review Board." Id. at Sec. 504.850(b). If Peters denied an appeal submitted by Pride, this would be sufficient to establish personal involvement. However, there is no evidence in the record supporting the allegation that Peters denied a grievance submitted by Pride.[2] The record does contain a letter that Peters wrote to an attorney who was representing Pride. R. 64, Peters Letter. The letter apparently was a response to a request that Pride be transferred out of the maximum-security Menard Correctional Center. In the letter, Peters suggested that Pride may "address his concerns through the established inmate grievance procedures." Id. The record is silent concerning whether Pride ever took advantage of the grievance procedures, and Pride has not submitted a copy of the decision in which Peters allegedly denied his grievance.[3] Thus, there is insufficient evidence in the record to establish that Peters was personally involved in any deprivation of Pride's rights.
 
 II. Disciplinary Hearing[4]
 A. Re-written Adjustment Committee Summary
 
 5
 After the adjustment committee found Pride guilty of sexual misconduct, he filed a grievance. The Administrative Review Board recommended granting Pride a new hearing, and Director Peters concurred. The conduct report was rewritten and a second hearing held, where Pride was convicted once again.[5] Pride then filed this suit claiming that the adjustment committee's conduct in the second hearing violated his due process rights. While this case was pending in the district court, the adjustment committee (apparently without prompting from Director Peters or the Administrative Review Board) again rewrote the summary describing the basis for its decision.[6] Pride argues that the district court erred by considering the third summary when deciding whether the committee's decision violated his due process rights.
 
 
 6
 Pride argues that by considering the third summary, the district court violated the doctrine of "mend the hold." This doctrine, however, applies only to contract law.[7] In addition, we note that the differences between the second and third summaries are relatively minor. Still, we agree with Pride that the defendants should be bound by the reasons stated in the second summary. Thus, we will evaluate Pride's claims using the explanations for the committee's decision set forth in the second summary.
 
 B. Confidential Information
 
 7
 Pride argues that the committee violated his due process rights by improperly relying on a confidential report prepared by Investigator Shaw. He contends that the committee failed to reveal the details necessary for him to marshal the facts necessary to mount a defense. The relevant portion of the second disciplinary report states the charges as follows:
 
 
 8
 Investigator Shaw advised that Inmate Pride should be charged with sexual misconduct in that during the months of April and May of 1991 he was involved in an intimate relationship with a female staff member at the Illinois River Correctional center. This relationship occurred in the library area of the Illinois River Center. Any further information can be received by contacting Investigator E. Shaw with the Springfield Investigation Unit.
 
 
 9
 Pride contends that this report did not provide the details (e.g., actions with specific persons on specific dates at specific times) necessary for him to mount a defense to the charges. Generally, an inmate charged with a disciplinary violation must receive notice sufficient to "enable him to marshal the facts and prepare a defense." Wolff v. McDonnell, 418 U.S. 539, 564 (1974). When confidential information is used, however, the release of "specific factual information ... would seriously risk exposing the confidential informant's identity." Dawson v. Smith, 719 F.2d 896, 899 (7th Cir.1983); cert. denied, 466 U.S. 929 (1984). Accordingly, specific facts need not be revealed so long as other procedures are followed to insure that the confidential information is reliable. See McCollum v. Williford, 793 F.2d 903, 906-08 (7th Cir.1986); Mendoza v. Miller, 779 F.2d 1287, 1293 (7th Cir.1985), cert. denied, 476 U.S. 1142 (1986). Here, the defendants submitted Investigator Shaw's confidential report to the district court for in camera review, and we have reviewed it as well. The district court found the report reliable, and we do not find this conclusion clearly erroneous. See Wells v. Israel, 854 F.2d 995, 1000 (7th Cir.1988) (appellate court reviews reliability of confidential information for clear error). This in camera review is sufficient to satisfy Pride's right to due process. See Mendoza, 779 F.2d at 1293. Thus, the defendants did not violate Pride's due process rights by failing to reveal the details of Investigator Shaw's confidential report.
 
 C. Witnesses
 
 10
 Pride argues that the adjustment committee improperly refused to allow him to call two witnesses at his disciplinary hearing. An inmate has a due process right to "call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. The second adjustment committee summary states that Pride's request for witnesses was untimely because it was not made until the day of the hearing. The committee may properly refuse requests for witnesses that are not made prior to the day of the hearing. See Miller v. Duckworth, 963 F.2d 1002, 1005 n. 2 (7th Cir.1992); Hamilton v. O'Leary, 976 F.2d 341, 346-47 (7th Cir.1992). Pride alleges, however, that his request for witnesses was made before the day of the hearing.
 
 
 11
 Even if a genuine issue of material fact exists concerning when the request was made, the adjustment committee acted within its rights in excluding the witnesses. In his deposition, Pride stated that the witnesses would have testified concerning his access to the prison library, where the sexual misconduct allegedly occurred. R. 53, Pride Deposition at 12. This testimony, however, would be irrelevant to Pride's guilt or innocence; he did not dispute that he worked in the library and had access to the librarian with whom he allegedly engaged in sexual contact. See id. The adjustment committee is not required to call witnesses whose testimony is not relevant to the proceedings. See Forbes v. Trigg, 976 F.2d 308, 318 (7th Cir.1992), cert. denied, 113 S.Ct. 1362 (1993); see also Turner v. Caspari, 38 F.3d 388, 391 (8th Cir.1994).[8] Accordingly, the committee did not violate Pride's rights by refusing his request for witnesses.
 
 III. Retaliation
 
 12
 Pride alleges that the adjustment committee convicted him in retaliation for previous lawsuits that he had filed. Prison officials may not retaliate against inmates who seek to exercise their constitutional right of access to the courts. DeTomaso v. McGinnis, 970 F.2d 211, 214 (7th Cir.1992).[9] To state a claim for retaliation, the inmate "must allege a chronology of events from which retaliation may plausibly be inferred." Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988); see also Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir.1987). "[M]erely alleging the ultimate fact of retaliation is insufficient." Benson v. Cady, 761 F.2d 335, 342 (7th Cir.1985). In the instant case, Pride has not stated a chronology of events from which a finder of fact may plausibly infer retaliation. Pride claims that the defendants retaliated against him because of his legal activities. He has not, however, provided a list of previous lawsuits or incidents involving the defendants that would furnish a basis for his claim of retaliation. Thus, the district court properly granted summary judgment to the defendants on this claim.
 
 IV. Equal Protection
 
 13
 Pride, who is black, claims that the defendants violated his equal protection rights by treating a similarly situated white inmate differently. Pride states that a white inmate named Upchurch was convicted of a similar offense and given the same sentence. See R. 53, Pride Deposition at 34-35. He alleges, however, that he remained at a maximum security institution for two years while Upchurch was transferred back to a medium security facility after three months. Id. at 35.
 
 
 14
 Absent a compelling state interest, discrimination against inmates on the basis of race violates the Equal Protection Clause. Black v. Lane, 824 F.2d 561, 562 (7th Cir.1987). To prevail on his equal protection claim, however, Pride must show that the defendants intentionally discriminated against him because of his race. Barnett v. Daley, 32 F.3d 1196, 1198 (7th Cir.1994); Trautvetter v. Quick, 916 F.2d 1140, 1149 (7th Cir.1990). Pride does not present any evidence of discriminatory intent aside from this one instance of a white inmate receiving a slightly different punishment for a similar offense. Given the multitude of reasons why Upchurch may have been transferred back to a medium security prison more quickly than Pride, we do not believe that a rational trier of fact could conclude based on the record before us that Pride was the victim of intentional racial discrimination. Thus, the district court properly granted summary judgment to the defendants on Pride's equal protection claim.
 
 V. Appointment of Counsel
 
 15
 Finally, Pride argues that the district court erred by denying his request for the appointment of counsel. A civil litigant has no constitutional or statutory right to counsel, but the district court may "request counsel to represent indigents in appropriate cases." Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir.1995); cf. 28 U.S.C. Sec. 1915(d). We review the district court's decision not to appoint counsel for abuse of discretion. Zarnes, 64 F.3d at 288.
 
 
 16
 Pride fulfilled the threshold requirement for appointment of counsel by attempting (and failing) to obtain a private attorney to represent him. See Jackson v. McLean, 953 F.2d 1070, 1073 (7th Cir.1992). The district court determined, however, that appointment of counsel for Pride was not warranted under the standard that applies in this Circuit. See Zarnes, 64 F.3d at 288; see also Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.), cert. denied, 114 S.Ct. 438 (1993). In denying counsel, the district court noted that Pride was experienced in legal matters, the issues were not sufficiently complex to require the assistance of counsel, and Pride did not need an attorney to uncover the truth of the issues presented. See R. 43, Memorandum and Order. These conclusions are supported by the record. In addition, the district court's determination that Pride could adequately represent himself is bolstered by the fact that he filed lengthy and detailed pro se briefs to this court in which he identified a number of appealable issues. Thus, the district court did not abuse its discretion by declining to appoint an attorney to represent Pride.
 
 VI. Conclusion
 
 17
 The district court properly granted summary judgment to the defendants, and its decision not to appoint counsel for Pride was not an abuse of discretion. Accordingly, the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 The adjustment committee found Pride guilty of sexual misconduct. Illinois prison regulations define sexual misconduct as "[e]ngaging in sexual intercourse, deviate sexual conduct or fondling, or touching done to sexually arouse either or both persons; or engaging in any of these activities with an animal." Ill.Admin.Code Sec. DOC 504, Table A (107)
 
 
 [2]
 Peters ruled in favor of Pride on one grievance and ordered a new hearing for Pride on the sexual misconduct charge. See Appellant's Brief, Appendix B (Administrative Review Board Recommendation). Pride is apparently complaining that Peters' denial of a subsequent grievance violated his constitutional rights
 
 
 [3]
 Peters submitted an affidavit acknowledging that his office engaged in a review of Pride's claims. R. 53, Peters Affidavit p 5. Peters attested, however, that he was not personally involved in this review, id. at p 6, and the record contains no further evidence concerning the nature of the review
 
 
 [4]
 Our determination that the disciplinary committee did not violate Pride's constitutional rights, see infra, makes it unnecessary to discuss whether his claims are barred by the Supreme Court's recent decision in Sandin v. Connor, 115 S.Ct. 2293 (1995)
 
 
 [5]
 At the second hearing, the disciplinary committee sentenced Pride to three months of segregation and demotion to C grade for three months
 
 
 [6]
 It is not clear whether Pride was given a third hearing or whether the committee simply rewrote the summary
 
 
 [7]
 The "mend the hold" doctrine prevents a party from taking inconsistent positions regarding the interpretation of a contract during the course of litigation. See C.L. Maddox, Inc. v. Coalfield Services, Inc., 51 F.3d 76, 79 (7th Cir.1995); AM International, Inc. v. Graphic Management Associates, Inc., 44 F.3d 572, 576 (7th Cir.1995); Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362 (7th Cir.1990)
 
 
 [8]
 In addition, the adjustment committee need not state the reasons for its decision to exclude witnesses in writing. Ponte v. Real, 471 U.S. 491, 496 (1985). Thus, we may rely on reasons not stated in the adjustment committee summary
 
 
 [9]
 Pride also claims that he was kept in a maximum security prison for two years in retaliation for filing lawsuits. An inmate generally has no right to be housed in any particular facility. Meachum v. Fano, 427 U.S. 215, 224 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Whitford v. Boglino, 63 F.3d 527, 532 (7th Cir.1995)