**Clifton WELLS, Plaintiff–Appellant,**

v.

**Thomas R. ISRAEL, Superintendent, et al., Defendants–Appellees.**

No. 86–1525.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1987.

Decided Aug. 10, 1988.

Allen E. Shoenberger, Loyola Law School, Chicago, Ill., for plaintiff-appellant.

Daniel O'Brien, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before CUMMINGS, WOOD, Jr. and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiff Clifton Wells, a state prisoner, alleged that defendant prison officials did not accord him procedural due process when they placed him first in punitive segregation and then in administrative segregation. In disciplining Wells, the officials relied on confidential information which they did not disclose to Wells. The district court granted the prison officials' motion for summary judgment while denying Wells's cross-motion. *Wells v. Israel,* 629 F.Supp. 498 (E.D.Wis.1986). We affirm. However, while the district court's reasoning was otherwise sound, the district court did not determine whether that confidential information was reliable. We publish this opinion to emphasize to district courts the importance of making specific findings in that regard.

## I. NATURE OF THE CASE

This case's factual and procedural history is set forth in the district court's reported opinion. The parties stipulated below to the facts necessary to decide this appeal. Briefly stated, Wells, convicted under Wisconsin law in 1969 of murder and armed robbery, is a prisoner at the Dodge Correctional Institution in Waupun, Wisconsin. The defendants are various prison officials.

Four times between September, 1977 and April, 1981, they placed Wells in punitive segregation after a hearing before a prison disciplinary committee convened in accordance with Wis. Admin. Code § HSS 303.

In each instance, the prison disciplinary committee comprised of four prison staff members convened in response to allegations from informants among the inmates that Wells had threatened other inmates and attempted to forcibly secure sex. The disciplinary committee considered as evidence confidential written statements from the informants and in three of the four incidents considered a statement by Wells or a staff advocate appointed to represent him.[1] The committee also considered the testimony of the investigating officer who obtained the confidential informant statements and who had initiated the disciplinary proceedings by issuing a written conduct report. Neither the contents of the confidential statements nor their sources nor the specific acts constituting the conduct were disclosed to Wells or his staff advocate. Each time, the disciplinary committee found that Wells had violated prison rules by engaging in serious misconduct, see Wis. Admin. Code § HSS 303.70.

Subsequently, on April 12, 1981, the prison officials placed Wells in "administrative" segregation. Administrative segregation is not designed to punish a prisoner but rather is imposed on a prisoner pursuant to Wis. Admin. Code § HSS 308 "solely because he or she is dangerous, to ensure personal safety and security within the institution." A prison review committee reviewed Wells' administrative segregation every three months. Each time, until October, 1983, the review committee determined that Wells continued to be dangerous and thus his administrative segregation should continue.

## II. NATURE OF THE PROCEEDINGS

Wells brought this action under § 1983 alleging that defendants did not afford him his procedural due process rights under the Fourteenth Amendment in conducting the disciplinary hearings and in punishing him. Wells filed his complaint on February 12, 1981. He later committed his fourth disciplinary violation, and after the start of his administrative segregation he amended his pleadings to include later events. Wells sought money damages from the individual defendants as well as equitable relief—including expunging the disciplinary violations from his records and eliminating any adverse collateral consequences resulting from those violations.

Wells charged that in imposing the punitive and then the administrative segregation, defendants failed to provide him the minimum due process requirements for a prison disciplinary setting set forth by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Those requirements include advance written notice of the charges against him and a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563, 94 S.Ct. at 2978. In particular, Wells challenged the prison committee's reliance upon the reports from the confidential informants. As Wells complained, "[a]t no time ... have the officially designated fact finders, whether it be the disciplinary committees or the review committee, chosen to conduct *in camera* interviews or examinations of inmates who complained against Mr. Wells, or otherwise to inquire into the credibility or competence of those witnesses." Wells argued that this all makes a difference because he was just a peaceful prisoner innocent of all the internal charges brought against him. Wells maintained that he never knew what the charges were, and whatever they were, they had to have been false, because he did not violate any prison rule: "I am not guilty of any of the misconduct alleged in any of the conduct reports described above, or any other wrongdoing which would warrant the imposition of the segregated con-

---

1. The defendants do not contend that Wells waived any of his procedural rights by not appearing at one of the hearings.

finement to which I have been subjected since September, 1977."

The parties filed cross-motions for summary judgment. On February 26, 1986, the district court granted defendants' motion and issued its opinion. The court examined whether providing the confidential information to Wells might benefit his case and at the same time whether providing that information might harm prison security or threaten the informants' safety. After weighing those conflicting interests, the court determined that the prison officials appropriately withheld the information. 629 F.Supp. at 504. The court then held that in light of that balancing, Wells received adequate advance written notice. Attached to each notice was the conduct report, each of which specifically mentioned sexual threats.

The court then found that except for the first finding in September, 1977, in which the committee found that Wells was "[g]uilty of all charges," the findings were constitutionally adequate. The court in particular held the Fourteenth Amendment did not require that the committee expressly evaluate the confidential information's reliability. 629 F.Supp. at 505. While the court did find that the sparse first finding failed to meet Wells's due process rights, only one of the named defendants, Thomas Israel, then the warden, was responsible for that, and at the time a prisoner's right to a more complete statement was not clearly established. Therefore, the court held, Israel was immune from damages. The court further held that as the evidence did sufficiently establish that Wells was guilty of the wrongdoing, he was not entitled to having that first disciplinary violation expunged from his administrative record. 629 F.Supp. at 509.

The district court concluded that the review committee's decisions to continue to confine Wells in administrative segregation was constitutional. The court found that Wells, a staff advocate, and a social worker all had an opportunity to speak on Wells's behalf at the review hearings. The review committee based its decisions on those statements as well as on the contents of a complete file, which included—in addition to the earlier conduct reports—other staff recommendations and reports of Wells's behavior in the interim from the previous review. 629 F.Supp. at 508.

## III. JURISDICTION

Jurisdiction below was proper pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3). Jurisdiction on appeal is proper pursuant to 28 U.S.C. § 1291.

## IV. ANALYSIS

We have already considered several times the procedural as well as the substantive standards which govern prison disciplinary hearings, especially where prison authorities rely upon confidential informants. See *Culbert v. Young*, 834 F.2d 624 (7th Cir.1987) (collecting cases), *cert. denied*, — U.S. ——, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988); *McKinney v. Meese*, 831 F.2d 728 (7th Cir.1987) (collecting cases); *Wagner v. Williford*, 804 F.2d 1012 (7th Cir.1986) (collecting cases). At issue here is the due process requirement that confidential information upon which a disciplinary committee relies be reliable. *McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982) [*McCollum I*]; *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984). In *Wagner v. Williford*, 804 F.2d 1012, 1015 (7th Cir.1986), this court decided that *McCollum I* retroactively applies to all cases, such as this one, which were pending prior to June 9, 1986 (when this court held in *Sanchez v. Miller*, 792 F.2d 694, that a disciplinary hearing's constitutionality is to be determined by the law existing on the date of the hearing, *id.* at 702).

"Not all prison inmates who inform on other inmates are telling the truth; some are enacting their own schemes of revenge." *McCollum I*, at 1049. Requiring a reliability determination is a procedural safeguard which helps assure that the disciplinary committee conducts a full and meaningful hearing, even when the prisoner does not know and thus cannot contest the specific information to be used against

him. As the Sixth Circuit recently explained,

> Assessment of the reliability of inmate informants is an essential prerequisite to imposing discipline for violations established through the use of informant testimony.... [N]o adjudicative conclusion can be reliable, and no meaningful due process can be accorded, if accusations are accepted at face value, with no consideration of their source.
>
> \* \* \* \* \* \*
>
> [U]nless the committee makes an independent determination about what the facts of the alleged misconduct are by deciding, minimally, that the hearsay information has been supplied by a reliable informant, it is merely recording the finding made by the investigating officer who has made a determination about the informant's reliability.... To proceed in that fashion is not fact finding. It is recordkeeping.

*Hensley v. Wilson,* 850 F.2d 269 (6th Cir. 1988).

▮ A prisoner is not entitled to any minimum process when challenging the reliability of confidential information. How a court conducts its reliability inquiry must be compatible with prison security and not expose the informants to undue risk. The court in *Wagner* pointed to *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986), for four ways to prove that confidential information is reliable:

> 1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; 2) corroborating testimony; 3) a statement on the record by the chairman of the disciplinary committee that, "he had first-hand knowledge of the sources of the information and considered them reliable on the basis of 'their past record of reliability' "; or 4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Mendoza,* 779 F.2d at 1293 (citations omitted).

▮ The district court here stated that it reviewed the items in the record, which included the informants' statements and the conduct reports. As mentioned above, the district court found that the confidential information which formed the basis of the conduct reports filed against Wells was properly withheld from him. 629 F.Supp. at 504. The district court further found that the disciplinary committee's findings show that the committee must have *believed* the confidential information was credible. *Id.* at 505 (citing favorably *Hudson v. Cady,* 610 F.Supp. 1096 (E.D.Wis. 1985)). Both of those findings are correct. But the district court never reviewed the *reliability* of the confidential information.

It is not surprising that the district court did not do this. First, the district court believed—erroneously—that Wells does not challenge the truth of the violations he was charged with committing: "the plaintiff does not challenge the substantive aspect of the disciplinary committees' findings of his misconduct." *Id.* at 504. Second, the district court reached its decision before this court decided *Wagner, supra,* which applied *McCollum I* retroactively. It only looked to the law at the time of the disciplinary hearings (prior to *McCollum I*), when a finding of reliability was not required.

The parties in their briefs and in oral argument requested that we review *in camera* the confidential records which formed the basis of the conduct reports filed against Wells. We accede to the parties' request, but only after first cautioning that this is not the preferred procedure and that we may not do so again. Several previous panels have made such a review, but apparently only after a lower tribunal had done so first. In *Dawson, supra,* 719 F.2d 896, the confidential material upon which the prison disciplinary action was based was first reviewed by a magistrate, who presumably made findings capable of review. This court then reviewed the confidential information provided *in camera* and concluded that it contained "sufficient additional information to bolster the relia-

bility of the information." In *Mendoza, supra,* this court evaluated *in camera* a post-hoc summary report prepared by prison officials for the litigation only for clear error: "Our review of the determination of reliability is deferential because, 'it is inherently dangerous to even attempt to determine the reliability of an informant since such effort could jeopardize lives and the willingness of informants to continue providing information.'" *Mendoza,* at 1293, quoting *Dawson,* at 899. That confidential report had been submitted to the magistrate below, 779 F.2d at 1298, even though this court then conducted an "extensive and exhaustive *in camera* review of the confidential report." And in *McKinney v. Meese,* 831 F.2d 728 (7th Cir.1987), this court "conducted an independent review of the *in camera* material," 831 F.2d at 732, but only after the magistrate and the district court had already done so. *Id.*

■ A district court has a special role to play in reviewing reliability. If necessary, the court may hear testimony regarding how the prison staff conducted the investigations and how they kept their files. Inquiry like that is not possible in this court. The district court may also give prison officials the opportunity to supplement the administrative record. *See McKinney, supra,* 831 F.2d at 730 n. 1; *Wagner, supra,* 804 F.2d at 1016 n. 3. Or the court may permit them to file a confidential post-hoc report describing why the confidential information was reliable. *Mendoza,* 779 F.2d at 1295 ("prison officials may satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review."). *But see Hensley, supra* (holding that due process requires "contemporaneous recording of the evidence. Although due process does not require that the committee's findings also be recorded contemporaneously, this is the better practice."). The district court may also have to decide whether to allow the prisoner's counsel to see the material under an appropriate protective order, *see McKinney, supra,* 831 F.2d at 732. Finally, and practically, the district court will often have to decide how to go about creating a record we can properly review on appeal, perhaps by the stipulation of counsel as to what the sometimes barely legible confidential materials say and what they mean.

■ An appellate court should look at the confidential material only after the trial court has made findings regarding such material. If post-hoc *in camera* review is chosen from among the four alternatives to establish reliability, there is no reason why Fed.R.Civ.P. 52 should not govern the district court's findings as to reliability, which would be reviewed under a "clearly erroneous" standard by this court. It is not our function to serve as the first body to review evidence to determine its reliability. As the court in *McCollum I* cautioned, "You need a better feel ... than we have to make judgments in these sensitive matters; and they happen to be matters of life and death." 695 F.2d at 1049.

■ Fortunately for the parties' request, because of the documents and comments thereon submitted, this is the rare case where we are in any event capable of conducting a reliability review. We have carefully reviewed the material that was before the prison disciplinary committee regarding each of the conduct reports at issue. We find that these materials possess sufficient indicia of reliability. With regard to each charge, additional evidence corroborates the reliability of the principal information. For example, letters from different inmates corroborate and confirm material details, and are in turn corroborated by independent investigations conducted by the security staff. The confidential informants are always identified by name. Several request that the prison officials place them in segregation because they fear Wells. With regard to the last conduct report, Wells himself sent three letters soliciting homosexual favors and threatening harm if those favors were not granted.

We do not go into further detail in this opinion to protect the informants' identities. The confidential information in the record would have enabled the respective disciplinary committees "to come to a reasoned conclusion that the informant is reliable and, therefore, that the story he has related to the investigating officer is likely

to be true." *Hensley, supra.* Thus, this time we can avoid remanding this matter to the district court to undertake the inquiry into reliability mandated by *McCollum I* and *Wagner.*

### V. CONCLUSION

Now that we know that the information upon which the disciplinary committees relied was reliable, we adopt the reasoning found in the district court's thorough opinion, with the following brief comments. First, the findings of the prison disciplinary committees are supported by some evidence in the record, as required by *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2770, 86 L.Ed.2d 356 (1985). Second, the Sixth Circuit's recent decision in *Hensley* confirms that the district court was correct in holding that the constitutional deficiency in the first statement of evidence was not clearly established at the time. The district court's judgment is

AFFIRMED.