**Thomas PING and Ronald Nance, Petitioners,**

v.

**Danny McBRIDE, Respondent.**

**Ronald NANCE, Petitioner,**

v.

**Danny R. McBRIDE, Respondent.**

**Nos. 3:92cv659 AS, 3:92cv784 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 19, 1993.

Thomas Ping, Westville, IN, Ronald Nance, Palmyra, IN, for plaintiff.

Thomas D. Quigley, Indiana Atty. Gen., Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Both of the abovementioned petitioners are seeking a writ of habeas corpus pursuant to a CAB hearing and the resulting disciplinary action from that hearing. The return in each case was filed on April 6, 1993, and complies with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). Petitioner Nance filed a Traverse to the Return on June 25, 1993, and an elaborate 23–page memorandum with supporting affidavits and materials which is quite lawyerlike in form and substance. Petitioner Ping filed a Traverse on June 29, 1993, which is equally lawyerlike. The court compliments these two *pro se* petitioners on the legal quality of their presentation to this court.

When a complaint is fashioned as a petition under 28 U.S.C. § 2254 with regard to the Conduct Adjustment Board (CAB) proceedings, this court is compelled to hear those claims. *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.1992), *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992), *Miller v. Duckworth*, 963 F.2d 1002 (7th Cir.1992), and *Harris v. Duckworth*, 909 F.2d 1057 (7th Cir.1990).

*See also Billops v. Wright,* 803 F.Supp. 1439 (N.D.Ind.1992).

This court consolidated the abovecaptioned matters because of the common issues of law and fact. Both petitioners were confined at the Branchville Training Center in Tell City, Indiana. In the respective Conduct Reports, both petitioners are charged with battery, a violation of state law. Both Conduct Reports also contain a Report of Investigation of Incident. Both Conduct Reports charge that on December 21, 1991, the petitioners, Ping and Nance, cut another inmate, Steven West, with a sharp object, causing a laceration approximately four inches long and an inch deep. It is also indicated that the events preceding the battery occurred in the recreational room and the actual battery occurred while the victim was in the restroom.

The various exhibits reveal that each petitioner had a lay advocate. Additionally, each petitioner made a statement exculpatory in nature to the CAB. In each case, the CAB found the respective petitioner guilty of battery. In so doing, the CAB indicated:

> The CAB has reviewed the evidence including the Conduct Report[,] Offender's Statement, Investigative Report and Lay Advocate's [S]tatement. The CAB does not believe the offender's version and believes the investigator['s] summary accurately describes the incident.

*See Memorandum in Support of Return to Order to Show Cause* at 3 (for both petitioners). The CAB recommended sanctions of a year's disciplinary segregation, transfer to a more secure facility, demotion in time-earning class from credit class I to credit class III, and loss of 300 days' earned credit time for petitioner Ping. The CAB recommended the same sanctions for petitioner Nance except for the demotion in time-earning class.

Both petitioners pursued an appeal as outlined in the Disciplinary Hearing Appeal. Petitioner Ping appealed and argued "that he was denied a written copy of the CAB's findings of fact, that he and Offender Ronald Nance had both been found guilty of the same offense although [the victim] had been cut only once, and that he could not have cut [the victim] on the left side because he is

right-handed." *Id.* In his appeal, petitioner Nance argued that

> he and Ping were both found guilty of the same offense although [the victim] had been cut only once, that he was refused the lay advocate of his choice and that [the actual lay advocate with responsibility for the hearing] had been given only fifteen minutes' notice that he would represent [the petitioner], that there was no evidence at the hearing that could be used to convict him of anything, that he was not allowed to see the information the CAB relied upon in finding him guilty, that the Disciplinary Hearing Report reflected the wrong date of the hearing and thus was a decision made before hearing the evidence, and that the report contained neither a statement of the findings of fact nor a recitation of the evidence relied upon.

*Id.* at 4. Both appeals were denied. Finally, this court notes that petitioner Ping also filed a Petition for Restoration of Time, which was also denied.

## I.

■ Here, in both of the abovecaptioned cases, the Attorney General of Indiana argues that both petitioners have procedurally defaulted on their respective claims. Recently, in *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992), the Seventh Circuit made it clear that it is incumbent upon a petitioner challenging a CAB proceeding to demonstrate exhaustion of available *administrative* remedies. Here, the Attorney General of Indiana has very persuasively extended the holding of *Markham* to procedural default. The petitioners have also made very persuasive arguments on this issue.

In *Markham,* the Seventh Circuit evaluated the issue of exhaustion in the context of a CAB hearing. The § 2254 petitioner indicated that in evaluating certain disciplinary infractions, the CAB denied his constitutional due process rights. Apparently, in so doing, the CAB eliminated the petitioner's accrued good time credit and lengthened his sentence by 243 days. In *Markham,* the Seventh Circuit, speaking through Judge Posner, indicated that it is axiomatic to federal habeas corpus relief that the petitioner exhaust any

available state remedies, before a federal court will review the claim. The *Markham* court indicated that "[t]here are two questions: whether a state prisoner is required to exhaust state administrative as well as judicial remedies, and what happens if he fails to do so." *Id.* at 994.

On these questions, the *Markham* court explained:

> We do not think "courts" in section 2254(b) should be interpreted as being limited to tribunals presided over by persons who are called judges and wear robes. We think the term as it appears in this statute should be read to embrace any tribunal that provides available and effective corrective process.... How states carve up adjudicative functions between courts and agencies is in general and in this particular no business of the federal courts, for the Constitution does not prescribe any particular allocation or separation of powers among the states.... If one state wants to use an administrative body where another state would use a conventional "court," its choice is a matter of indifference from the standpoint of the principles of federalism and comity that underlie section 2254(d). Federal prisoners are required (by judicial rule, not statute) to exhaust their administrative remedies before they can seek relief under the federal prisoner's habeas corpus surrogate, 28 U.S.C. § 2255.... The case for exhaustion of administrative remedies by state prisoners is stronger. Federal courts should not intrude into the relations between a state and its convicted criminals until the state has had a chance to correct its own mistakes. Indiana has established a corrective process for prisoners aggrieved by disciplinary sanctions; we hold that prisoners must use it before turning to the federal courts. Our conclusion is reinforced by 28 U.S.C. § 2254(c), which provides that 'an applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of [section 2254(b) ], if he had the right under the law of the State to raise, *by any available procedure,* the question presented.' There is no limitation to judicial procedure.

*Id.* at 995. (emphasis supplied) (citations omitted).

Here, the Attorney General argues that by making the exhaustion doctrine applicable in cases of this ilk, then the procedural default analysis must be applied as well. Specifically, the Attorney General maintains that in the abovecaptioned matters, both petitioners have appealed the CAB decisions through the prison administrative system. Apparently, the petitioners pursued certain issues on the administrative level that are different from the issues contained in their petitions here. Next, the Attorney General maintains that the petitioners are only granted one opportunity to pursue their claims on the administrative level and are barred from another opportunity to pursue such administrative remedies. The petitioners did not assert the issues in this petition at the applicable administrative level, and cannot return to the administrative level with these same claims.[1] Therefore, the Attorney General argues that the claims are procedurally defaulted. The petitioners concede that the logical extension of *Markham* is the application of procedural default to cases of this ilk. Here, the petitioners also point out some very important and fundamental differences between the state court system and the administrative review procedures for CAB hearings. The petitioners argue that these differences make procedural default untenable for purposes of the CAB hearing, the administrative process, and § 2254. The petitioners also argue that assuming *arguendo* that there is a procedural default issue, then there is cause and prejudice for their procedural default.

This court must commend the Indiana Attorney General on this very cogent and refined application of habeas concepts in this area. This court is equally impressed with the response of the petitioners on this issue. This is undoubtedly an issue of first impression. This court notes that there are many similarities between a § 2254 action premised on a CAB finding and an action pursuant to a state criminal trial. There are, however, some very fundamental problems in the ap-

plication of cause and prejudice and the comparison becomes very convoluted.

In evaluating the polemics of this issue, this court has revisited the decision in *Harris v. Duckworth,* 909 F.2d 1057 (7th Cir.1990), and the opinion of the Indiana Supreme Court in *Hasty v. Broglin,* 531 N.E.2d 200 (Ind.1988). This court also notes the discussion of an important facet of this issue in *Forbes v. Trigg,* 976 F.2d 308 (7th Cir.1992). In *Forbes,* the Seventh Circuit, speaking through Chief Judge Bauer, revisited the historical foundation and antecedent for the decision in *Markham, supra:*

> Finally, [the petitioner] argues that the Fourteenth Amendment requires Indiana to provide judicial review of state prisoners' federal constitutional claims. The Indiana Supreme Court has held that Indiana courts do not have jurisdiction to hear such claims. *See Hasty v. Broglin,* 531 N.E.2d 200 (Ind.1988); *Bates v. State,* 426 N.E.2d 404 (Ind.1981); *Riner v. Raines,* 274 Ind. 113, 409 N.E.2d 575 (1980). The United States Supreme Court has twice granted certiorari on the question of whether the Due Process Clause requires state judicial review of federal constitutional claims. *See Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1984); *Case v. Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1964). In both cases, the Court declined to decide the issue. We also decline. Although this is a significant question, and some state courts and at least one district court have reviewed it, see, e.g., *Richardson v. Miller,* 716 F.Supp. 1246, 1257–60 (W.D.Mo.1989) (thoroughly reviewing issue); *Prock v. District Court of Pittsburg County,* 630 P.2d 772 (Okla.1981), we do not believe we should decide this issue in a case where a prisoner has been accorded a judicial forum, albeit a federal one, in which to raise his claims. We also note that our decisions in *Miller v. Duckworth,* 963 F.2d 1002 (7th Cir.1992), and *Harris v. Duckworth,* 909 F.2d 1057, 1058 (7th Cir.

---

1. The Adult Disciplinary Policy Procedures handbook of the Indiana Department of Correction indicates that a disciplinary appeal must begin within ten working days after an inmate receives the CAB's decision, and that final review must begin within fifteen working days after receipt of a first-level denial. *See Procedure* 25 A and 25 C.

1990), bind our decision on this claim. Thus we leave further resolution of this issue for the Supreme Court, if that Court chooses to address it.

*Id.*

Although the issue presented here is not completely congruent with the issue discussed in *Forbes,* the issues presented in *Markham* require this court to seek answers to many of the same questions outlined in *Forbes.* Therefore, this court will not resolve this important issue at this time. In light of the posture of this case and the constitutional issues presented by the petitioners here, this court will address the alleged constitutional violations as outlined by the petitioners in their respective § 2254 actions.

## II.

Most of the petitioners' claims are arguably based on the content and integrity of the evidence. This court reviews CAB hearings of this ilk for compliance with the constitutional mandates of *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Initially, this court notes that in *Pardo v. Hosier,* 946 F.2d 1278, 1280–81 (7th Cir.1991), the Seventh Circuit, speaking through Judge Wood, explained the necessary considerations surrounding a claim of this nature:

> In evaluating constitutional claims of prisoners, we must balance the need to protect prisoners' procedural rights against the need for prison safety and security. *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied,* 465 U.S. 1025 [104 S.Ct. 1282, 79 L.Ed.2d 685] (1984). In prison disciplinary proceedings, "prison administrators must be 'accorded wide-ranging deference in the ... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Mathews v. Fairman,* 779 F.2d 409, 415 (7th Cir.1985) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979)).

*Id.* The holding in *Pardo* is especially applicable to the situation at issue here.

In *Rasheed–Bey v. Duckworth,* 969 F.2d 357 (7th Cir.1992), the Seventh Circuit, speaking through Judge Eschbach, revisited the due process requirements for a CAB hearing:

> The requirements imposed by the Due Process Clause are "flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). We "cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974). Nonetheless, "a prisoner is not wholly stripped of constitutional protection when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56, 94 S.Ct. at 2974. Accordingly, in considering the command of the Due Process Clause in light of the peculiar exigencies of the prison setting, the Supreme Court has held that an inmate, while not entitled to the full panoply of due process rights accorded to free citizens, is entitled to fundamental protection from the arbitrary action of government. *Wolff,* 418 U.S. at 556–58, 94 S.Ct. at 2974–76; *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871.

> Beginning with *Wolff,* the Supreme Court established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Before being deprived of a protected liberty interest, a prisoner is entitled to (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent Mass. Corr. Inst. v. Hill,* 472 U.S. 445 [453–54], 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356

(1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Inmates have no right to confront and cross examine adverse witnesses; thus, a disciplinary board's decision is not limited to evidence presented at the hearing. *Baxter v. Palmigiano,* 425 U.S. 308, 322–23, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976). Furthermore, this court has held that an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten institutional concerns. *Mendoza v. Miller,* 779 F.2d 1287 (7th Cir.1985), cert. denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Dawson v. Smith,* 719 F.2d 896, 898–99 (7th Cir.1983). If such information is to remain confidential, it must be supported by some indication of reliability. *Mendoza,* 779 F.2d at 1295 (citations omitted).

*Id.*

Here, insofar at the petitioners center on issues surrounding the sufficiency of the evidence, this court notes the relevant language of *Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In order to protect due process rights in the context of a prison disciplinary proceedings, the Supreme Court in *Supt., Mass. Corr. Institution at Walpole,* outlined and explained the requisite standards for evaluating the proceedings:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require the examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56, 105 S.Ct. at 2774 (citations omitted).

In *Culbert v. Young,* 834 F.2d 624, 631 (7th Cir.1987), the Seventh Circuit, speaking through Judge Ripple, explained:

> the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides, *see Saenz v. Young,* 811 F.2d 1172 (7th Cir.1987). The Constitution does not require that the evidence relied upon logically preclude any conclusion but the one reached by the disciplinary board ...

*Id.*

▮ It needs to be emphasized that this court does not sit as a trial de novo with regard to prison disciplinary proceedings, rather it sits to determine whether there were constitutional errors in those proceedings. Here, the CAB followed the requisite procedures. It is also basic that federal question jurisdiction under 28 U.S.C. § 2254 cannot be bottomed solely on an effort to require state officials to comport their conduct to state law and regulations. The focus must be on constitutional claims. *Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. den.,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). Neither is it the proper function of this court under the mandate of *Supt., Mass. Corr. Institution,* 472 U.S. at 445, 105 S.Ct. at 2769, to reweigh conflicting evidence and to make credibility determinations. *See Viens v. Daniels,* 871 F.2d 1328 (7th Cir.1989).

In both of the abovecaptioned matters, the CAB made confidential documents a part of the record and this is perhaps the key to the entire case. It is important to revisit the requirements of *Wells v. Israel,* 854 F.2d 995 (7th Cir.1988), with reference to the proper procedures for CAB consideration of confidential documents. In *Wells,* the Seventh Circuit, speaking through Judge Manion, thoroughly evaluated the abovementioned process:

> We have already considered several times the procedural as well as the substantive standards which govern prison disciplinary hearings, especially where prison authorities rely upon confidential informants. *See Culbert v. Young,* 834

F.2d 624 (7th Cir.1987) (collecting cases), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988); *McKinney v. Meese,* 831 F.2d 728 (7th Cir.1987) (collecting cases); *Wagner v. Williford,* 804 F.2d 1012 (7th Cir.1986) (collecting cases). At issue here is the due process requirement that confidential information upon which a disciplinary committee relies be reliable. *McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1982) [*McCollum I* ]; *Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984). In *Wagner v. Williford,* 804 F.2d 1012, 1015 (7th Cir.1986), this court decided that *McCollum I* retroactively applies to all cases, such as this one, which were pending prior to June 9, 1986 (when this court held in *Sanchez v. Miller,* 792 F.2d 694 [ (7th Cir.1986) ], that a disciplinary hearing's constitutionality is to be determined by the law existing on the date of the hearing, *id.* at 702).

"Not all prison inmates who inform on other inmates are telling the truth; some are enacting their own schemes of revenge." *McCollum I,* at 1049. Requiring a reliability determination is a procedural safeguard which helps assure that the disciplinary committee conducts a full and meaningful hearing, even when the prisoner does not know and thus cannot contest the specific information to be used against him. As the Sixth Circuit recently explained,

> Assessment of the reliability of inmate informants is an essential prerequisite to imposing discipline for violations established through the use of informant testimony.... No adjudicative conclusion can be reliable, and no meaningful due process can be accorded, if accusations are accepted at face value, with no consideration of their source.
>
> Unless the committee makes an independent determination about what the facts of the alleged misconduct are by deciding, minimally, that the hearsay information has been supplied by a reliable informant, it is merely recording the finding made by the investigating officer who has made a determination about the informant's reliability.... To proceed

in that fashion is not fact finding. It is recordkeeping.

*Id.* at 998–99. (quoting *Hensley v. Wilson,* (6th Cir.1988), 850 F.2d 269).

In *Carter v. Duckworth,* 739 F.Supp. 1259 (N.D.Ind.1989), this court dealt with the issues surrounding the use of confidential information in a CAB proceeding. This court specifically invoked the analysis mandated in *Wells v. Israel, supra:*

> The court must specifically examine the use of confidential information under the four alternative established in *Wells v. Israel,* 854 F.2d 995, 998–999 (7th Cir.1988). *Wells,* establishes four alternatives to prove confidential information is reliable in a C.A.B. hearing. These options are: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the Disciplinary Committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the Disciplinary Committee that "he had first hand knowledge of the sources of the information and considered them reliable on the basis of their past record of reliability", or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential information. *See also Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), cert. denied, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986).
>
> Here, the CAB relied on the fourth method, namely, an in camera review of the material documenting the investigator's assessment of the credibility of the confidential informant. This court has also examined such documentation that has been provided in camera to it, and the in camera nature has been preserved in this record for such review as may take place on any appeal of this case. This court and this court alone has examined the in camera material.

*Id.* at 1261–62.

This court also reviewed many of the recent decisions in this area and the abovementioned evaluation and finding in *Carter* certainly comports with the aforementioned applicable cases. In *Dillard v. Lane,* 1993 WL 96521, 1993 U.S.Dist Lexis (N.D.Ill.1993),

Judge Plunkett evaluated a claim of this ilk. The language of this case suggests that Judge Plunkett inherited this case from Judge Rovner after she was elevated to the Seventh Circuit. In *Dillard,* the court explained that "[t]he next issue to be resolve[d] is whether the Adjustment Committee that found [the inmate] guilty of possessing weapons adequately verified the credibility of certain confidential informant testimony." *Id.* On this issue, the court explained:

> In her ... Opinion, Judge Rovner determined that an in camera review of the investigatory file was necessary in this case to determine whether the file contained adequate evidence of the credibility of confidential informants and whether any exculpatory evidence existed. *See Campbell v. Henman,* 931 F.2d 1212, 1215 (7th Cir.1991) (per curiam).

*Id.*

■ Here, as in *Carter, supra,* and *Dillard, supra,* the CAB relied on an in camera review of the material included in the confidential file. Additionally, this court removed the confidential materials for the clerk's vault and reviewed the same in camera. This court also notes that there was no exculpatory information in the confidential files. In light of the holding in *Wells* and this court's application here and in *Carter,* this court finds the in camera materials illustrate the propriety of the CAB's decision.

A careful review of this record fails to establish any basis for any of the alleged violations of the Constitution of the United States with reference to the CAB proceedings here involved. There is no basis for relief here stated under 28 U.S.C. § 2254. The petition is, therefore, **DISMISSED WITH PREJUDICE. IT IS SO ORDERED.**